UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-61916-BLOOM/Valle

APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

        Plaintiffs,

v.

BAGANI.MOBI, *et al.,*

        Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION
FOR ENTRY OF PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Preliminary Injunction ("Motion"), ECF No. [9]. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised.

By the instant Motion, Plaintiffs, Apple Corps Limited and Subafilms Limited (collectively "Plaintiffs"), move for entry of a preliminary injunction against Defendants,[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). The Court held a hearing by video conference on October 13, 2020, which was attended by counsel for Plaintiffs only. During the hearing, Plaintiffs directed the Court to evidence supporting the Motion for Preliminary Injunction. Prior to the hearing, Plaintiffs notified the Court that it had received an email inquiry from Defendant Number 18[2] to which Plaintiffs provided notice of the hearing and

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").

[2] Plaintiffs' counsel was also contacted via email by attorneys based in the United States and China regarding a possible resolution of the matter on behalf of Defendant Numbers 15, 18, 19, 35, 37, 38, 40, 45, 47, 51, 53, 54, 60, 62, 63, 65, 70, 81, 82, 83, 87, 89, 91, 94, and 95, ECF No. [24], at n.1.

Defendants' rights to file answers in response to Plaintiffs' claims. Other email communications were received but were in the context of attempting to resolve the case and were not objections to the issuance of a preliminary injunction. None of the Defendants formally responded to the Motion, nor have they made any appearance or filing in this case, other than the above-mentioned emails, either individually or through counsel. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court grants the Motion.

## I. FACTUAL BACKGROUND[3]

Plaintiff, Apple Corps Limited, is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 025 - Headwear, sweatshirts, t-shirts, shirts.<br><br>IC 026 - Belt buckles. |
| BEATLES | 3,680,063 | September 8, 2009 | IC 006 – Key rings and key chains.<br><br>IC 026 – Ornamental buckles for clothing. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Decorative refrigerator magnets; computer keyboard accessories, |

---

However, counsel or Defendants have not entered any formal appearance or filed any response with the Court as of this date.

[3] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Motion, ECF No. [9], and supporting evidentiary submissions. Plaintiffs filed declarations and exhibits annexed thereto in support of their Motion. The declarations are available in the docket at the following entries: Declaration of Paul Cole, ECF No. [9-1], Declaration of Stephen M. Gaffigan, ECF No. [9-2], and Declaration of Kathleen Burns, ECF No. [9-3].

| | | | |
|---|---|---|---|
| | | | namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms.<br><br>IC 014 - Jewelry; horological and chronometric instruments, namely, watches and clocks; cuff links, bracelets, pendants, medallions, trinkets being jewelry, charms being jewelry, ornamental pins.<br><br>IC 015 – Musical instruments.<br><br>IC 018 - Luggage, clutch bags, rucksacks, backpacks, umbrellas; bags, namely, handbags, shoulder bags, all-purpose sports bags, carry-on flight bags, suitcases, school bags, satchels, gym bags, tote bags, textile shopping bags.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, t-shirts, sweatshirts; jackets, |

|  |  |  | coats; scarves; neck-ties; socks; long-sleeved shirts and long sleeved t-shirts; fleece tops; thermal tops; jerseys; tank tops; swim wear; slippers; cloth babies' bibs. |
|---|---|---|---|

*See* Declaration of Paul Cole, ECF No. [9-1], at 4-5; ECF No. [1-2] (containing Certificates of Registrations for the BEATLES Marks at issue). The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Paul Cole, ECF No. [9-1], at 4-5.

Plaintiff, Subafilms Limited, is the owner of the following trademark which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| **Trademark** | **Registration Number** | **Registration Date** | **Class(es) / Good(s)** |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 025 - Shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; neck-ties; hats; caps; sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

*See* Declaration of Paul Cole, ECF No. [9-1], at 10-11; ECF No. [1-3] (containing Certificate of Registration for the YELLOW SUBMARINE Mark at issue). The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the category identified above. *See* Declaration of Paul Cole, ECF No. [9-1], at 10-11.

4

Defendants, by operating commercial Internet websites and Internet based e-commerce stores operating under Defendants' respective domain names and seller identification names identified on Schedule "A" hereto (the "Subject Domain Names and Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions or colorable imitations of the BEATLES Marks and/or the YELLOW SUBMARINE Mark (collectively "Plaintiffs' Marks"). *See* Declaration of Paul Cole, ECF No. [9-1], at 16-20; Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2; Declaration of Kathleen Burns, ECF No. [9-3], at 4.

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [9-1], at 16-23. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [9-1], at 16, 18-20, 23.

Counsel for Plaintiffs retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. *See* Declaration of Paul Cole, ECF No. [9-1], at 17; Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2; Declaration of Kathleen Burns, ECF No. [9-3], at 3. Invisible accessed the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs and placed orders from each Defendant for the purchase of various products, all

5

bearing[4] and/or using counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [9-3], at 4. Each order was processed entirely online, and following the submission of the orders, Invisible received information for finalizing payment[5] for the various products ordered via Amazon Payments, Inc.,[6] via DHpay.com,[7] via PayPal, Inc. ("PayPal")[8] to Defendants' respective PayPal accounts and/or via Defendants' respective payee,[9] which are identified on Schedule "A" hereto.[10] (See id.)  At the

---

[4] A certain Defendant blurred-out and/or physically altered the images of Plaintiffs' Marks on the product being offered for sale via its e-commerce store. The product Invisible received from this Defendant bears Plaintiffs' Marks in their entirety. (*See* Burns Decl. ¶ 4, n.1.)

[5] Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding additional funds to Defendants' coffers. (*See* Gaffigan Decl. ¶ 2, n.1; Burns Decl. ¶ 4, n.2.)

[6] Defendant Numbers 3-9 operate via the non-party Internet platform Amazon.com. Amazon allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed, but Amazon Payments, Inc. has the ability to identify and restrain the payment accounts using a seller's unique seller identification number.  (*See* Gaffigan Decl. ¶ 5; Burns Decl. ¶ 4, n.3.)

[7] Defendant Number 10 uses the non-party Internet platform DHgate.com, which processes its payments via the third-party platform, DHpay.com. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (*See* Burns Decl. ¶ 4, n.4; Gaffigan Decl. ¶ 6.)

[8] Defendant Numbers 1-2 and 11-36 use money transfer and retention services with PayPal. Upon completion of Invisible's purchases from Defendant Numbers 13, 15, 26 and 35 operating via eBay.com, Invisible discovered that the PayPal receipts received did not identify the Defendants' PayPal financial accounts in the form of an e-mail address. However, the receipts identify the Transaction Identification Number ("Transaction ID") for the purchase made from each Defendant's Seller IDs, and PayPal is able to identify a PayPal account using the Transaction ID. (*See* Burns Decl. ¶ 4, n.5.)

[9] The payee for the orders placed from Defendant Numbers 37-98 identifies "Joom USA Inc," which is the aggregate PayPal account for purchases made via Joom.com.  (*See* Burns Decl. ¶ 4 n.6; Gaffigan Decl. ¶ 8.)  The Joom.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account. (*See* Gaffigan Decl. ¶ 8.)

The payee for the orders placed from Defendant Numbers 99-102's Wish.com Seller IDs identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made Wish.com. (*See* Burns Decl.

conclusion of the process, the detailed web page captures[11] and images of the various Plaintiffs' branded products ordered via Defendants' Subject Domain Names and Seller IDs,[12] together with photographs of one of the products received, were sent to Plaintiffs' representative, Paul Cole, for inspection. *See* Declaration of Paul Cole, ECF No. [9-1], at 18; Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2.

Plaintiffs' representative reviewed and visually inspected the detailed web page captures and photographs reflecting Plaintiffs' branded products Invisible ordered from Defendants through the Internet websites and Internet based e-commerce stores operating under their respective Subject Domain Names and Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods. *See* Declaration of Paul Cole, ECF No. [9-1], at 18-20.

On September 21, 2020, Plaintiffs filed their Complaint, ECF No. [1], against Defendants for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. On September 22, 2020, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [9]. On September 23, 2020, this Court entered a sealed Temporary Restraining Order, ECF No. [11], and temporarily restrained

---

¶ 4 n.6; Gaffigan Decl. ¶ 9.) The Wish.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account. (*See* Gaffigan Decl. ¶ 9.)

[10] Defendant Numbers 1-2 also provided contact e-mail addresses in connection with their Subject Domain Names, which are included on Schedule "A" hereto. (*See* Burns Decl. ¶ 4 n.7.)

[11] The web pages captured and downloaded by Plaintiffs' counsel's office, Stephen M. Gaffigan, P.A., identifying the Seller Identification Number, Store Name and/or Store Number for certain Defendants are included in Comp. Exs. "2," "5" and "6" to the Burns Decl.

[12] Certain Defendants changed their seller identification names during the preparation and filing of the Application for Temporary Restraining Order in this case. These Defendants, together with their alias seller identification names are identified on Schedule "A" to the Application for Temporary Restraining Order.

Defendants from infringing Plaintiffs' Marks at issue. The Temporary Restraining Order also directed Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., PayPal, Inc. ("PayPal"), SIA Joom, which operates the Joom.com platform ("Joom"), and ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), to identify and restrain funds in payment accounts associated with Defendants and to divert those funds to a holding account. Pursuant to the Court's September 23, 2020 Order, Plaintiffs served Defendants with a copy of the Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, and the Court's September 23, 2020 Temporary Restraining Order, thereby providing notice and copies of the September 23, 2020 Temporary Restraining Order and Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets via email to each Defendant's corresponding email/online contact form, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at http://servingnotice.com/artfr4/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [20] and [21].

## II. LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995).

Case No. 20-cv-61916-BLOOM/Valle

### III. ANALYSIS

The declarations Plaintiffs submitted in support of their Motion for Preliminary Injunction support the following conclusions of law:

A. Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sales, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks;

B. Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion for Preliminary Injunction, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely true than not that:

1. Defendants own or control Internet websites and Internet based e-commerce stores operating under their Subject Domain Names and Seller IDs which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2. There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed

by the potential harm to Plaintiffs, their respective reputations, and their goodwill as manufacturers and distributors of quality products, if such relief is not issued.

        D.        The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods.

        E.        Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

        F.        Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.,* 51 F.3d at 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)); and

        G.        In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [9],** is **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are enjoined and restrained until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiffs; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet websites and Internet based e-commerce stores owned and operated, or controlled by them, including the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as

the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites and Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs;

(4) Each Defendant shall not transfer ownership of the Internet websites or Internet based e-commerce stores operating under their Subject Domain Names and Seller IDs during the pendency of this action, or until further order of the Court;

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet websites or Internet based e-commerce stores under their Subject Domain Names and Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet websites or Internet based e-commerce stores under their Subject Domain Names and Seller IDs that may have been deleted before the entry of this Order;

(6) Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., PayPal, Inc. ("PayPal"), SIA Joom, which operates the Joom.com platform ("Joom"), ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates shall (i) to the extent not already done, (i) immediately identify and restrain all funds in all financial accounts and/or sub-accounts associated with the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs, merchant

identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

(7) Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., PayPal, Joom, ContextLogic, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., PayPal, Joom, ContextLogic, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(8) This Order shall apply to the Subject Domain Names and Seller IDs, associated websites and e-commerce stores, and any other domain names, seller identification names, websites, e-commerce stores, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with the Plaintiffs;

(9) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(10) As a matter of law, this Order shall no longer apply to any Defendant or associated e-commerce store, photo album, or domain name dismissed from this action, or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

(11) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(12) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to Amazon, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., PayPal, Joom, ContextLogic, and their related companies and affiliates shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel

with any e-mail address known to be associated with the Defendants' respective Subject Domain Names and Seller IDs;

(13)   This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 13, 2020

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record *via* E-mail.

Case No. 20-cv-61916-BLOOM/Valle

## SCHEDULE A:
## DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, ASSOCIATED FINANCIAL ACCOUNTS, ASIN AND E-MAIL ADDRESS

| Def. No. | Defendant / Subject Domain Name / Seller ID | Financial Account Information | Amazon Item ASIN or E-Mail Address |
|---|---|---|---|
| 1 | bagani.mobi | haiyenpp19@gmail.com | admin@bagani.mobi |
| 2 | pretty-shirt.com | chesterswyatt@hotmail.com<br>buitrungdung2210@gmail.com | trantutbqn@yahoo.com<br>thaivu36382@gmail.com |
| 3 | Art Fish | A27I3WBO2K55RU | B0871FG7SP |
| 4 | DIEU LINH NGUYEN | A3I79ZTDZ340QO | B089YFF4HH |
| 5 | fresrddtgf | A3NSCKLC2P2SBP | B086ZQ6S5X |
| 6 | Hthygy | A3TDLBV3PO80H0 | B086MXVHFH<br>B086MXKH7M |
| 7 | Ielzpmd13dt | A3FLVF333045P6 | B084QFBWQX<br>B084Q5F8NB |
| 8 | Robert Dtesta | A26T708L9VJWO3 | B086TT4NBQ |
| 9 | tengzhoushilongquandongchenglifadian | ALP606MTO5XVT | B08DN8G4XQ |
| 10 | Wildwear | 14774358 | |
| 11 | ahmamuqorrobi_0 | lowesean700@yahoo.com | |
| 12 | armalag0 | dingadiredjo@gmail.com | |
| 13 | atlanso | PayPal transaction ID: 0BJ86154AX1650219 | |
| 14 | cathely_0 | catherine.sherly@yahoo.com | |
| 15 | charms-price-storm | PayPal transaction ID: 172385685J441662G | |
| 16 | goodkitchen4u | Baophanvan092@yahoo.com | |
| 17 | lahie_64 | lahiertayi@gmail.com | |
| 18 | levtstore | levanthoglk840@gmail.com | |
| 19 | lovecharmworld2012 | lovecharmworld@gmail.com | |
| 20 | malca | feelingwu99@gmail.com | |
| 21 | maulidi0 | helmy.maulidina@gmail.com | |
| 22 | mo246145 | SUMANTO94828@gmail.com | |
| 23 | nafssabri_0 | nafsasabrin@gmail.com | |

| | | | |
|---|---|---|---|
| 24 | ngutat_27 | nguyentatnien.dn1992@gmail.com | |
| 25 | nguyenyen.tore | yennh2367@yahoo.com | |
| 26 | nxhstore1994 | PayPal transaction ID: 37660833KR429173Y | |
| 27 | revay0 | tatikwinarni499@gmail.com | |
| 28 | siriz-16 | siskarizkiya038@gmail.com | |
| 29 | skinny14680 | skinny1468@gmail.com | |
| 30 | sukmdevia | rizkynanberkah@gmail.com | |
| 31 | tri-j28 | trijaniatun28tr@gmail.com | |
| 32 | trph-6912 | phanvuongtrieu4071013@hotmail.com | |
| 33 | tru-9394 | TRUONGVIETANHdvf587@gmail.com | |
| 34 | winkel.99 | lord_lucas@yahoo.com | |
| 35 | wybeads-fine-jewelry | PayPal transaction ID: 867530313C923941J | |
| 36 | yususety_0 | yusufprasetyo560@gmail.com | |
| 37 | 3 Idiots | 5d458ec91436d4030122195c | |
| 38 | antelope | 5d52835f28fc710301a00a8e | |
| 39 | Arbutus-34 | 5b51a4768b2c370353deec85 | |
| 40 | Baby dress | 1517884686413800174-140-5-709-2672229233 | |
| 41 | Bangkok a/k/a Bangkok29 | 5af0100b1436d40316ec6fed | |
| 42 | Bennet a/k/a Bennet28 | 5afa4ce08b2c370317df95eb | |
| 43 | Berlin a/k/a Berlin42 | 5af012358b45130383483864 | |
| 44 | Betelnut06 | 5afa48041436d403aa69de51 | |
| 45 | Better time | 1513587289219863090-86-3-709-3245415502 | |
| 46 | Cabbage a/k/a Cabbage47 | 5afa50c38b4513036342ffd4 | |
| 47 | Cefef | 5da414d01436d40301cf884d | |
| 48 | confer15 | 5df6fc2328fc710301c5d270 | |
| 49 | CowboyJean | 5bc978bf28fc7103172e72e3 | |
| 50 | Desert Rose-19 | 5b51a1518b451303bc8c112a | |

| 51 | DM Decor | 5d9e9d231436d40301c40569 | |
| 52 | Dusty Miller-25 | 5b51a2278b2c370353dec79e | |
| 53 | eight octopus | 5d5e817f8b2c3703019caf83 | |
| 54 | ERNX | 5d9b587836b54d03012c2c64 | |
| 55 | Fashion 3C Phone Case Store | 5d171fcd1436d403019bf6bc | |
| 56 | flashlight07 | 5df6fb781436d40301f25ec0 | |
| 57 | found303 | 5e09697f8b45130301d4c189 | |
| 58 | Golden Bamboo-26 | 5b51a25a8b451303bc8c1ad7 | |
| 59 | guard309 | 5e0969d08b2c37030172df09 | |
| 60 | House Yami | 5dc386a28b451303011fbe05 | |
| 61 | hung304 | 5e09698936b54d03010f6d5e | |
| 62 | JO186 | 5db712118b2c3703013b84d4 | |
| 63 | JO427 | 5de557b328fc710301599fbb | |
| 64 | Laomeng05 | 5df6fb4e8b2c370301fb66be | |
| 65 | Les choristes | 5d458edd8b2c370301c36350 | |
| 66 | LiliumL-3 | 5b5199ea8b2c370353de6958 | |
| 67 | Melon a/k/a Melon41 | 5afa4f5a8b4513036342e94a | |
| 68 | Mens-Clothes04 | 5acf1de11436d40371bd0258 | |
| 69 | Mexico City | 5af0103f1436d40316ec714e | |
| 70 | Mini Malls | 5bdc29ec8b2c37032676b0f0 | |
| 71 | Montreal a/k/a Montreal45 | 5af012798b45130383483be3 | |
| 72 | Music Bar01 | 5aced10b1436d40371b8684a | |
| 73 | Nectarine a/k/a Nectarine27 | 5afa4c318b2c370317df8928 | |
| 74 | out52 | 5e0da2711436d403015c64c5 | |
| 75 | out61 | 5e0da56836b54d03019facd0 | |
| 76 | Pagoda Tree-20 | 5b51a16e1436d40366ca7262 | |
| 77 | Peach | 5afa49dc8b2c370317df6a15 | |
| 78 | Pineapple a/k/a Pineapple18 | 5afa49f58b2c370317df6b9a | |

| 79 | Pitaya a/k/a Pitaya19 | 5afa4a028b2c370317df6bff | |
| 80 | realize12 | 5df6fbed1436d40301f27fc7 | |
| 81 | SDGI | 5d9b543436b54d03012bc4ec | |
| 82 | Shopping Night | 5d9ad3c38b2c3703012267cf | |
| 83 | Sky of shop | 5db81be628fc7103019508de | |
| 84 | Smart Watches05 | 5acf38eb8b2c37035e9540b6 | |
| 85 | Star Cluster-32 | 5b51a3131436d40366ca872e | |
| 86 | stripping306 | 5e0969ad28fc71030121f6bd | |
| 87 | SuperModel | 5cac51b68b45130301702b34 | |
| 88 | template03 | 5df6fb1328fc710301c58091 | |
| 89 | Titanic | 5d458e728b45130301192fcf | |
| 90 | Tokyo a/k/a Tokyo04 | 5af00ea88b4513038347df3b | |
| 91 | TopKitchen World | 5d7f422736b54d0301b14ff1 | |
| 92 | vanished302 | 5e0969731436d40301cc7b6c | |
| 93 | vast300 | 5e09695d8b45130301d4bbcc | |
| 94 | Vovlo Office | 5cb4296736b54d0301ead15f | |
| 95 | Vwiwi | 5da417278b2c370301700e09 | |
| 96 | Walnut a/k/a Walnut21 | 5afa4a508b4513036342a2d9 | |
| 97 | willnot11 | 5df6fbcc8b451303011e7816 | |
| 98 | withdrawn301 | 5e0969698b2c37030172cd5c | |
| 99 | WDRDIEV | 5d58b8449373f45fb03a865f | |
| 100 | YIJIN03 | 5d5020a07ad2420b0af72029 | |
| 101 | YIJIN18 | 5d54e6d23db43e584e3583a6 | |
| 102 | ZHOUJIE56 | 5d5776f1560eca3980ed6b5e | |