**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-61916-BLOOM/Valle**

APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

                Plaintiffs,

v.

BAGANI.MOBI, *et al.*,

                Defendants.
_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs' Apple Corps Limited and Subafilms

Limited (collectively "Plaintiffs"), Motion for Entry of Final Default Judgment Against

Defendants, ECF No. [46] ("Motion"), filed on December 1, 2020. A Clerk's Default was entered

against Defendants on November 17, 2020, ECF No. [39], as Defendants failed to appear, answer,

or otherwise plead to the Amended Complaint, ECF No. [19], despite having been served. *See*

ECF No. [32]. The Court has carefully considered the Motion, the record in this case, the applicable

law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### I.  Introduction

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the

Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15

U.S.C. § 1125(a); common-law unfair competition; and common law trademark infringement. The

Amended Complaint alleges that Defendants are promoting, advertising, distributing, offering for

sale and selling goods bearing and/or using counterfeits and confusingly similar imitations of

Plaintiffs' respective registered trademarks within the Southern District of Florida by operating

fully interactive commercial Internet websites and Internet based e-commerce stores operating under the domain names or seller identities set forth on Schedule "A" attached to Plaintiffs' Motion for Entry of Final Default Judgment (the "Subject Domain Names and Seller IDs"). *See* ECF No. [46], at 20-23.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their rights to determine the manner in which their trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiffs; (3) deceived the public as to Plaintiffs' association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiffs' respective reputations and goodwill, as well as the commercial value of Plaintiffs' respective trademarks.

In their Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement. Plaintiffs further request that the Court (1) enjoin Defendants from producing or selling goods that infringe their trademarks; (2) cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (3) permanently remove the listings and associated images of goods bearing Plaintiffs' trademarks used by Defendants, via the Seller IDs, (4) require the surrender of Defendants' goods bearing Plaintiffs' trademarks to Plaintiffs; and (5) award statutory damages.

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order. *See* ECF No. [46] at 20-23.

2

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint and is therefore established by the entry of default."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

## II. Factual Background[2]

Plaintiff, Apple Corps Limited, is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 025 - Headwear, sweatshirts, t-shirts, shirts.<br><br>IC 026 - Belt buckles. |

---

[2] The factual background is taken from Plaintiffs' Amended Complaint, ECF No. [19], Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants, ECF No. [46], and supporting evidentiary submissions.

| BEATLES | 3,680,063 | September 8, 2009 | IC 006 – Key rings and key chains. IC 026 – Ornamental buckles for clothing. |
|---------|-----------|-------------------|------------------------------------|
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Decorative refrigerator magnets; computer keyboard accessories, namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms. IC 014 - Jewelry; horological and chronometric instruments, namely, watches and clocks; cuff links, bracelets, pendants, medallions, trinkets being jewelry, charms being jewelry, ornamental pins. IC 015 – Musical instruments. IC 018 - Luggage, clutch bags, rucksacks, backpacks, umbrellas; bags, namely, handbags, shoulder bags, all-purpose |

| | | | |
|---|---|---|---|
| | | | sports bags, carry-on flight bags, suitcases, school bags, satchels, gym bags, tote bags, textile shopping bags.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, t-shirts, sweatshirts; jackets, coats; scarves; neck-ties; socks; long-sleeved shirts and long sleeved t-shirts; fleece tops; thermal tops; jerseys; tank tops; swim wear; slippers; cloth babies' bibs. |

*See* Declaration of Paul Cole, ECF No. [9-1], at 4-5; ECF No. [19-1] (containing Certificates of Registrations of the BEATLES Marks at issue.) The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Paul Cole, ECF No. [9-1], at 4-5.

Plaintiff, Subafilms Limited, is the registered owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 025 - Shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; neck-ties; hats; caps; sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one piece garments for |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
|  |  |  | infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

*See* Declaration of Paul Cole, ECF No. [9-1], at 10-11; ECF No. [19-2] (containing Certificate of Registration for the YELLOW SUBMARINE Mark at issue.) The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Paul Cole, ECF No. [9-1], at 10-11.

Defendants, by operating commercial Internet websites and Internet based e-commerce stores operating under Defendants' respective domain names or seller identities identified on Schedule "A" hereto (the "Subject Domain Names and Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions or colorable imitations of the BEATLES Marks and/or the YELLOW SUBMARINE Mark (collectively "Plaintiffs' Marks"). *See* Declaration of Paul Cole, ECF No. [9-1], at 16--20; Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2; Declaration of Kathleen Burns, ECF No. [9-3], at 4;  Declaration of Kathleen Burns In Support of Notice of Additional PayPal Account Used By Defendant Number 2, ECF No. [18-1], at 5.

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [9-1], at 16-23. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [9-1], at 16, 18-20, 23.

Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. *See* Declaration of Paul Cole, ECF No. [9-1], at 17; Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2; Declaration of Kathleen Burns, ECF No. [9-3], at 3; Declaration of Kathleen Burns In Support of Notice of Additional PayPal Account Used By Defendant Number 2, ECF No. [18-1], at 3. Invisible accessed the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs, and placed orders from each Defendant for the purchase of various products, all bearing[3] and/or using counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [9-3], at 4; and Declaration of Kathleen Burns In Support of Notice of Additional PayPal Account Used By Defendant Number 2, ECF No. [18-1], at 5. Each order was processed entirely online and following the submission of the orders, Invisible received information for finalizing payment[4] for

---

[3] A certain Defendant blurred-out and/or physically altered the images of Plaintiffs' Marks on the product being offered for sale via its e-commerce store. The product Invisible received from this Defendant bears Plaintiffs' Marks in their entirety. (*See* Burns Decl. ¶ 4, n.1.)

[4] Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding additional funds to Defendants' coffers. (*See* Gaffigan Decl. ¶ 2, n.1; Burns Decl. ¶ 4, n.2.)

the various products ordered via Amazon Payments, Inc.,[5] DHpay.com,[6] PayPal, Inc. ("PayPal"),[7]

to Defendants' respective PayPal accounts[8] and/or via Defendants' respective payee,[9] as identified

on Schedule "A" hereto.[10] *See* Declaration of Kathleen Burns, ECF No. [9-3], at 4; <u>and</u> Declaration

of Kathleen Burns In Support of Notice of Additional PayPal Account Used By Defendant Number

---

[5] Defendant Numbers 3-9 operate via the non-party Internet platform Amazon.com. Amazon allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed, but Amazon Payments, Inc. has the ability to identify and restrain the payment accounts using a seller's unique seller identification number. (*See* Gaffigan Decl. ¶ 5; Burns Decl. ¶ 4, n.3.)

[6] Defendant Number 10 uses the non-party Internet platform DHgate.com, which processes its payments via the third-party platform, DHpay.com. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (*See* Burns Decl. ¶ 4, n.4; Gaffigan Decl. ¶ 6.)

[7] Defendant Numbers 1-2 and 11-36 use money transfer and retention services with PayPal. Upon completion of Invisible's purchases from Defendant Numbers 13, 15, 26 and 35 operating via eBay.com, Invisible discovered that the PayPal receipts received did not identify the Defendants' PayPal financial accounts in the form of an e-mail address. However, the receipts identify the Transaction Identification Number ("Transaction ID") for the purchase made from each Defendant's Seller IDs, and PayPal is able to identify a PayPal account using the Transaction ID. (*See* Burns Decl. ¶ 4, n.5.)

[8] After the Court's entry of the Temporary Restraining Order, ECF No. [11], Plaintiffs discovered Defendant Number 2 - pretty-shirt.com, was using an additional PayPal account to receive money in connection with its commercial Internet website. (*See* Gaffigan Decl. in Support of FDJ ¶ 2, n.2.) Accordingly, pursuant to the Court's Temporary Restraining Order, Plaintiffs requested PayPal restrain all funds in that Defendants' additional PayPal account. (*Id.*; *see also* Notice of Additional PayPal Account Used By Defendant Number 2, ECF No. [18].)

[9] The payee for the orders placed from Defendant Numbers 37-98 identifies "Joom USA Inc," which is the aggregate PayPal account for purchases made via Joom.com. (*See* Burns Decl. ¶ 4 n.6; Gaffigan Decl. ¶ 8.) The Joom.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account. (*See* Gaffigan Decl. ¶ 8.)

The payee for the orders placed from Defendant Numbers 99-102's Wish.com Seller IDs identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made Wish.com. (*See* Burns Decl. ¶ 4 n.6; Gaffigan Decl. ¶ 9.) The Wish.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account. (*See* Gaffigan Decl. ¶ 9.)

[10] Defendant Numbers 1-2 also provided contact e-mail addresses in connection with their Subject Domain Names, which are included on Schedule "A" hereto. (*See* Burns Decl. ¶ 4 n.7.)

2, ECF No. [18-1], at 5. At the conclusion of the process, the detailed web page captures[11] and images of Plaintiffs' branded products ordered via Defendants' Subject Domain Names and Seller IDs,[12] together with photographs of one of the products received, were sent to Plaintiffs' representative for inspection. *See* Declaration of Paul Cole, ECF No. [9-1], at 18; Declaration of Declaration of Stephen M. Gaffigan, ECF No. [9-2], at 2.

Plaintiffs' representative reviewed and visually inspected the detailed web page captures and photographs reflecting Plaintiffs' branded products Invisible ordered from Defendants' through the Internet websites and Internet based e-commerce stores operating under their respective Subject Domain Names and Seller IDs, and determined the products were not genuine versions of Plaintiffs' goods. *See* Declaration of Paul Cole, ECF No. [9-1], at 18-20.

### III.  Analysis

#### A.  Claims

##### 1.  *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that

---

[11] The web pages captured and downloaded by Plaintiffs' counsel's office, Stephen M. Gaffigan, P.A., identifying the Seller Identification Number, Store Name and/or Store Number for certain Defendants are included in Comp. Exs. "2," "5" and "6" to the Burns Decl.

[12] Certain Defendants changed their seller identification names during the preparation and filing of the Application for Temporary Restraining Order in this case. These Defendants, together with their alias seller identification names, are identified on Schedule "A" hereto.

was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2.   *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3.   *Common-Law Unfair Competition and Trademark Infringement (Counts III and IV)*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)"); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the

same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B.  Liability

The well-pled factual allegations of Plaintiffs' Amended Complaint properly allege the elements for each of the claims described above. *See* ECF No. [19]. Moreover, the factual allegations in Plaintiffs' Amended Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.  Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal.

2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [19]. Further, the Amended Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiffs' genuine products. *See id.* "The net effect of Defendants' actions will cause confusion for consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Plaintiffs." *See* ECF No. [19] at 37.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names and Seller IDs because Plaintiffs cannot control the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputations in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").  District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004)

(transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling or transferring their Subject Domain Names to Plaintiffs, their listings and associated images be removed, and the goods of each Defendant bearing one or more of Plaintiffs' trademarks be surrendered to further prevent the use of these instrumentalities of infringement.

### D.  Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-*23 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of

record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, establish Defendants intentionally copied Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' famous respective reputations. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing and/or using one (1) mark which were in fact counterfeits of at least one of Plaintiffs' Marks. *See* ECF No. [19]. Based on the above considerations, Plaintiffs suggest the Court award statutory damages of $1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.  Damages for False Designation of Origin

Plaintiffs' Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

**F. Damages for Common Law Unfair Competition and Trademark Infringement**

Plaintiffs' Amended Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

**IV.   CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [46],** is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 2, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

17

Case No. 20-cv-61916-BLOOM/Valle

**SCHEDULE A:**
**DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME,**
**ASSOCIATED FINANCIAL ACCOUNTS, ASIN AND E-MAIL ADDRESS**

| Def. No. | Defendant / Subject Domain Name / Seller ID | Financial Account Information | Amazon Item ASIN or E-Mail Address |
|---|---|---|---|
| 1 | bagani.mobi | haiyenpp19@gmail.com | admin@bagani.mobi |
| 2 | pretty-shirt.com | chesterswyatt@hotmail.com buitrungdung2210@gmail.com | trantutbqn@yahoo.com thaivu36382@gmail.com |
| 3 | N/A | | |
| 4 | DIEU LINH NGUYEN | A3I79ZTDZ340QO | B089YFF4HH |
| 5 | fresrddtgf | A3NSCKLC2P2SBP | B086ZQ6S5X |
| 6 | Hthygy | A3TDLBV3PO80H0 | B086MXVHFH B086MXKH7M |
| 7 | Ielzpmd13dt | A3FLVF333045P6 | B084QFBWQX B084Q5F8NB |
| 8 | Robert Dtesta | A26T708L9VJWO3 | B086TT4NBQ |
| 9 | N/A | | |
| 10 | Wildwear | 14774358 | |
| 11 | ahmamuqorrobi_0 | lowesean700@yahoo.com | |
| 12 | armalag0 | dingadiredjo@gmail.com | |
| 13 | atlanso | PayPal transaction ID: 0BJ86154AX1650219 | |
| 14 | cathely_0 | catherine.sherly@yahoo.com | |
| 15 | charms-price-storm | PayPal transaction ID: 172385685J441662G | |
| 16 | goodkitchen4u | Baophanvan092@yahoo.com | |
| 17 | lahie_64 | lahiertayi@gmail.com | |
| 18 | levtstore | levanthoglk840@gmail.com | |
| 19 | N/A | | |
| 20 | malca | feelingwu99@gmail.com | |
| 21 | maulidi0 | helmy.maulidina@gmail.com | |
| 22 | mo246145 | SUMANTO94828@gmail.com | |
| 23 | nafssabri_0 | nafsasabrin@gmail.com | |

18

Case No. 20-cv-61916-BLOOM/Valle

| 24 | ngutat_27 | nguyentatnien.dn1992@gmail.com | |
| 25 | nguyenyen.tore | yennh2367@yahoo.com | |
| 26 | nxhstore1994 | PayPal transaction ID: 37660833KR429173Y | |
| 27 | revay0 | tatikwinarni499@gmail.com | |
| 28 | siriz-16 | siskarizkiya038@gmail.com | |
| 29 | skinny14680 | skinny1468@gmail.com | |
| 30 | sukmdevia | rizkynanberkah@gmail.com | |
| 31 | tri-j28 | trijaniatun28tr@gmail.com | |
| 32 | trph-6912 | phanvuongtrieu4071013@hotmail.com | |
| 33 | tru-9394 | TRUONGVIETANHdvf587@gmail.com | |
| 34 | winkel.99 | lord_lucas@yahoo.com | |
| 35 | N/A | | |
| 36 | yususety_0 | yusufprasetyo560@gmail.com | |
| 37 | N/A | | |
| 38 | N/A | | |
| 39 | Arbutus-34 | 5b51a4768b2c370353deec85 | |
| 40 | N/A | | |
| 41 | Bangkok a/k/a Bangkok29 | 5af0100b1436d40316ec6fed | |
| 42 | Bennet a/k/a Bennet28 | 5afa4ce08b2c370317df95eb | |
| 43 | Berlin a/k/a Berlin42 | 5af012358b45130383483864 | |
| 44 | Betelnut06 | 5afa48041436d403aa69de51 | |
| 45 | N/A | | |
| 46 | Cabbage a/k/a Cabbage47 | 5afa50c38b4513036342ffd4 | |
| 47 | N/A | | |
| 48 | confer15 | 5df6fc2328fc710301c5d270 | |
| 49 | CowboyJean | 5bc978bf28fc7103172e72e3 | |
| 50 | Desert Rose-19 | 5b51a1518b451303bc8c112a | |
| 51 | N/A | | |

Case No. 20-cv-61916-BLOOM/Valle

| 52 | Dusty Miller-25 | 5b51a2278b2c370353dec79e | |
| 53 | N/A | | |
| 54 | N/A | | |
| 55 | Fashion 3C Phone Case Store | 5d171fcd1436d403019bf6bc | |
| 56 | flashlight07 | 5df6fb781436d40301f25ec0 | |
| 57 | found303 | 5e09697f8b45130301d4c189 | |
| 58 | Golden Bamboo-26 | 5b51a25a8b451303bc8c1ad7 | |
| 59 | guard309 | 5e0969d08b2c37030172df09 | |
| 60 | N/A | | |
| 61 | hung304 | 5e09698936b54d03010f6d5e | |
| 62 | N/A | | |
| 63 | N/A | | |
| 64 | Laomeng05 | 5df6fb4e8b2c370301fb66be | |
| 65 | N/A | | |
| 66 | LiliumL-3 | 5b5199ea8b2c370353de6958 | |
| 67 | Melon a/k/a Melon41 | 5afa4f5a8b4513036342e94a | |
| 68 | Mens-Clothes04 | 5acf1de11436d40371bd0258 | |
| 69 | Mexico City | 5af0103f1436d40316ec714e | |
| 70 | N/A | | |
| 71 | Montreal a/k/a Montreal45 | 5af012798b45130383483be3 | |
| 72 | Music Bar01 | 5aced10b1436d40371b8684a | |
| 73 | Nectarine a/k/a Nectarine27 | 5afa4c318b2c370317df8928 | |
| 74 | out52 | 5e0da2711436d403015c64c5 | |
| 75 | out61 | 5e0da56836b54d03019facd0 | |
| 76 | Pagoda Tree-20 | 5b51a16e1436d40366ca7262 | |
| 77 | Peach | 5afa49dc8b2c370317df6a15 | |
| 78 | Pineapple a/k/a Pineapple18 | 5afa49f58b2c370317df6b9a | |
| 79 | Pitaya a/k/a Pitaya19 | 5afa4a028b2c370317df6bff | |

| | | | |
|---|---|---|---|
| 80 | realize12 | 5df6fbed1436d40301f27fc7 | |
| 81 | N/A | | |
| 82 | N/A | | |
| 83 | N/A | | |
| 84 | Smart Watches05 | 5acf38eb8b2c37035e9540b6 | |
| 85 | Star Cluster-32 | 5b51a3131436d40366ca872e | |
| 86 | stripping306 | 5e0969ad28fc71030121f6bd | |
| 87 | N/A | | |
| 88 | template03 | 5df6fb1328fc710301c58091 | |
| 89 | N/A | | |
| 90 | Tokyo a/k/a Tokyo04 | 5af00ea88b4513038347df3b | |
| 91 | N/A | | |
| 92 | vanished302 | 5e0969731436d40301cc7b6c | |
| 93 | vast300 | 5e09695d8b45130301d4bbcc | |
| 94 | N/A | | |
| 95 | N/A | | |
| 96 | Walnut a/k/a Walnut21 | 5afa4a508b4513036342a2d9 | |
| 97 | willnot11 | 5df6fbcc8b451303011e7816 | |
| 98 | withdrawn301 | 5e0969698b2c37030172cd5c | |
| 99 | N/A | | |
| 100 | YIJIN03 | 5d5020a07ad2420b0af72029 | |
| 101 | YIJIN18 | 5d54e6d23db43e584e3583a6 | |
| 102 | ZHOUJIE56 | 5d5776f1560eca3980ed6b5e | |